# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DEANNA J. ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-606-K |
| | § | |
| SHERIFF RANDY MEEKS, in his | § | |
| Individual and official capacities; | § | |
| DEPUTY JOSH ROBINSON, | § | |
| DEPUTY WILLIAM WHITTEN, | § | |
| GINA LOPEZ, JANA CAMPBELL, | § | |
| OFFICER DANIEL CATALAN, | § | |
| INVESTIGATOR MICHELLE | § | |
| HUGHES a/k/a MICHELLE | § | |
| LOOPER, INVESTIGATOR | § | |
| JAY BORTON, each in their | § | |
| Individual capacity; HUNT COUNTY; | § | |
| and TAYLOR BAIL BONDS, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is: (1) Defendant's (Catalan) 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 34); (2) Defendants' Motion to Dismiss (Doc. No. 37); and (3) State Defendants Michelle Looper and Jay Borton's Amended Motion to Dismiss (Doc. No. 49). The Court has considered the motions, the responses, the replies, the supporting appendices, the applicable law, and any relevant portions of the record.

1

Plaintiff Robinson fails to meet the pleading standard on her claims against all Defendants. Qualified immunity applies to protect the individual defendants in the remaining claims. Thus, the Court **GRANTS Defendants' motions to dismiss.**

## I. Background

Plaintiff Deanna J. Robinson ("Plaintiff") brought this suit against Defendants Sherriff Randy Meeks ("Meeks"), Deputy Josh Robinson ("Robinson"), Deputy William Whitten ("Whitten"), Gina Lopez ("Lopez"), Jana Campbell ("Campbell"), Officer Daniel Catalan ("Catalan"), Department of Family and Protective Services ("DFPS") Investigator Michelle Hughes a/k/a Michelle Looper ("Hughes"), DFPS Investigator Jay Borton ("Borton"), and Hunt County ("County") (collectively "Defendants").

In her Second Amended Complaint ("Complaint"), which Plaintiff mistakenly entitled "First Amended Complaint," Plaintiff makes the following allegations.

On March 1, 2015, Plaintiff lived with her husband José R. Llenas, Jr., ("Llenas") her toddler L.S., and her three stepchildren. At the time, Plaintiff was 38 weeks pregnant with her unborn child, L.H. In the children's presence, Plaintiff and Llenas had an argument, and Llenas became violent. Plaintiff and her child L.S. fled to her parents' home. Plaintiff alleges from this point forward she intended to reside at her parents' home, and, therefore, the Court will refer to her parent's home as "Plaintiff's home."

After learning about Plaintiff and Llenas' argument, DFPS investigators allegedly told Plaintiff to stay at her parents' home. At some point later, Plaintiff alleges DFPS investigators told her they would take custody of L.S., but Plaintiff refused to release L.S. into DFPS's custody. Plaintiff alleges DFPS investigator Borton should have drawn the conclusion that L.S. was safe at Plaintiff's home and there was no need for DFPS to take custody of the child.

Borton applied for an *ex parte* hearing before a county judge for a writ of attachment to seize L.S. According to Plaintiff, Borton allegedly provided false information to the judge, stating L.S. was in danger. Based on this allegedly false information, the judge issued a writ of attachment.

On March 4, 2015, Officer Catalan, Deputies Robinson and Whitten, and DFPS investigators Hughes and Borton knocked on the door of Plaintiff's home. When Plaintiff opened the door, Defendants allegedly did not identify themselves but asked to take custody of L.S. Plaintiff makes different allegations in her Complaint regarding the writ of attachment to take custody of L.S. In certain parts of the Complaint, Plaintiff alleges the writ did not include required language; yet in other sections, she alleges the Defendants did not have a writ at that time but simply showed her an envelope and refused to show her the document inside.

Plaintiff refused to surrender L.S. and attempted to close the door, but Whitten forced the door open and entered her home without permission along with the other Defendants. Plaintiff allegedly screamed at them to not take her child and

screamed profanity at Defendants. Plaintiff alleges one of the three officers grabbed her, hit her arm and torso, pushed her against the kitchen counter, restrained her wrists, and punched her lower back multiple times. Plaintiff alleges Defendants made an agreement before this event to fabricate evidence and probable cause to protect themselves from misconduct accusations. As part of this alleged conspiracy, the officers allegedly dropped an ammunition clip on the floor, claimed Plaintiff reached for a handgun, and claimed she hit one of the officers.

Plaintiff was taken into custody. At that time, the officers allegedly spoke with county jail employees to get their help to cover up the alleged violations of Plaintiff's rights. Lopez, a jail employee, allegedly entered false information about Plaintiff's height and weight to make Plaintiff appear larger and more dangerous. Additionally, Lopez allegedly failed to note in the intake documentation that Plaintiff was experiencing pain and medical conditions which required medical attention. Campbell allegedly refused to document or photograph Plaintiff's bruises even though Campbell allegedly saw the bruises on Plaintiff's thighs and pregnant abdomen. Plaintiff claims Campbell failed to seek medical attention for Plaintiff from a prenatal doctor. While in jail, Plaintiff alleges she was kept in isolation under conditions that prevented her from sleeping or getting rest. Also during this time, Plaintiff claims jail employees denied her access to the library and other services.

After six days in jail, Plaintiff was released on bond on March 10, 2015. By that point, DFPS had taken custody of L.S. On March 15, 2015, Plaintiff gave birth

to L.H., who was taken into custody by DFPS three days later. L.H. was returned to Plaintiff's custody a week later and L.S. was returned to Plaintiff's custody a few days following.

On April 8, 2015, Sherriff Meeks held a press conference addressing Plaintiff's arrest. Meeks allegedly stated Plaintiff assaulted an officer, resisted arrest, and interfered with child custody. Meeks allegedly stated Deputy Robinson lost his ammo belt somehow, possibly because Plaintiff reached for the deputy's gun. Plaintiff also alleged Meeks wrote an opinion column in the local newspaper stating people want to harm and kill police officers. Plaintiff alleged these statements were about her. Plaintiff also alleged the article criticized her attorney for representing Plaintiff, causing the attorney to withdraw from the case.

A grand jury indicted Plaintiff for felony interference with child custody and no-billed the charge of assault on a public servant. Nine months later, Plaintiff was acquitted on the interference with child custody charge after a bench trial, and a few months later the resisting arrest charge was dismissed in Plaintiff's favor.

## II. Legal Standard

### A. 12(b)(6) Motion to Dismiss Legal Standard

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. Rule 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not a conclusory recitation of the elements of a cause of action. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555. The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id*. at 570. The court must view all facts in the light most favorable to the plaintiff. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Generally, the court must determine a motion to dismiss based solely on the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). However, the Fifth Circuit allows the district court to consider documents that are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### B. Qualified Immunity Legal Standard

Qualified immunity can shield various government employees from liability, including police officers and child protective service workers. *Hodorowski v. Ray*, 844 F.2d 1210, 1215–16 (5th Cir. 1988). While "the Northern District of Texas has questioned 'whether a Rule 12(b)(6) motion is the proper vehicle for resolving a claim of qualified immunity,'" the Court moves forward with analyzing qualified immunity when one defendant has asserted this right in an answer. *Reitz v. City of Abilene*, Civ. Action No. 1:16-CV-0181-BL, 2017 WL 3046881, *13 (N.D. Tex. May

25, 2017) (Frost, J.) (*quoting Thomas v. City of Desoto*, Civ. Action No. 3:02-CV-0480-H, 2002 WL 1477392, *1 n. 1 (N.D. Tex. July 8, 2002)).

Qualified immunity shields government officials from liability based on the performance of their discretionary functions. *See Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir. 2004). "Social workers employed by state agencies may assert a qualified immunity defense when sued under 42 U.S.C. § 1983 in their individual capacities." *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 400 (5th Cir. 2002). The Supreme Court has established that government officials performing their discretionary duties are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Courts apply a two-pronged test to determine whether qualified immunity applies in a given case. First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. *See Beltran*, 367 F.3d at 303. Under the first step in the qualified immunity test, courts consider facts "in the light most favorable to the party asserting the injury" to determine whether defendants violated constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236. Second, the court must determine whether the official's conduct was objectively reasonable in light of the clearly established legal rules at the time the alleged violation occurred. *See id*. While previously courts applied these two steps in strict chronological order, the Supreme

Court found a court may use its discretion in determining which of the two steps should be addressed first based on the circumstances in the particular case before it. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the defendant has asserted qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). To meet its burden, a plaintiff must claim "defendants committed a constitutional violation under current law" at the time and claim "defendants' actions were objectively unreasonable in light of the law that was clearly established." *Club Retro, L.L.C.*, 568 F.3d at 194. Thus, even if the court finds the defendants committed a constitutional violation, the court may find the defendants are shielded from liability because the violation was "objectively reasonable in light of the legal rules that were clearly established at the time." *McClendon*, 305 F.3d at 323.

## III. Voluntary Dismissal of Claims

In her response to the motions to dismiss, Plaintiff voluntarily dismissed certain claims.

Plaintiff has alleged the same § 1983 claims against the County and against Meeks in his official capacity. In her response to Defendants' motion to dismiss, Plaintiff moved for voluntary dismissal of her duplicative claims against Meeks in his official capacity. Thus, Plaintiff's claims for denial of equal protection and claim for

failure to train, supervise, discipline, and discharge asserted against Meeks in his official capacity are hereby **DISMISSED**.

Plaintiff also voluntarily dismissed her claims for: (1) retaliation for verbal defiance in violation of the First Amendment as to Defendants Catalan, Robinson, and Borton; (2) conspiracy to interfere with civil rights claim as to all Defendants; (3) interference with mother-child relationship as to Defendants Catalan, Robinson, and Whitten; and (4) bystander liability claim against Defendants Hughes and Borton. Accordingly, these claims are **DISMISSED** without prejudice.

## IV. Individual Capacity Claims

Plaintiff asserts claims against the individual Defendants in their individual capacity for violations of § 1983 and violation of her constitutional rights. Defendants argue Plaintiff failed to state claim and the Court should dismiss all of Plaintiff's claims. Alternatively, Defendants argue qualified immunity shields them from liability. The Court will analyze the Complaint claim by claim to determine whether Plaintiff has sufficiently stated a claim upon which relief can be granted and whether qualified immunity applies to shield Defendants from liability.

### A. Unlawful Search and Entry Claim

Defendants Catalan, Robinson, Whitten, Hughes, and Borton argue Plaintiff's unlawful search and seizure claim should be dismissed for failure to state a claim. To state a claim for unlawful search and entry, a plaintiff must allege the officers conducted a warrantless search and no exigent circumstances existed to make the

warrantless search reasonable. *Bringham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). If officers search a home based on a valid warrant, the officers have not violated the plaintiff's Fourth Amendment rights. *Id*.

Plaintiff recognizes the existence of a writ of attachment for her child. Plaintiff states she does not know if the Defendants possessed the writ when they entered her home and she does not know whether the court order issuing the writ was attached to the writ. The writ expressly references the order and states the order is attached to the writ. Plaintiff alleges the writ was obtained through an *ex parte* hearing before a county judge for DFPS to take emergency custody of Plaintiff's child. Plaintiff alleges that Borton provided false information to the judge to show probable cause. Plaintiff does not state what information Borton gave the judge or how it was false. Plaintiff alleges Defendants refused to show her the writ when they entered her home to take custody of her child but that Defendants did show her father.

The date on the writ of attachment and court order is March 4, 2015. That same day Plaintiff alleges Defendants took custody of L.S. at 8:15 p.m. Thus, the date on the writ and court order indicates the two documents issued before the Defendants took custody of L.S. The court is barred from considering whether the state court issued the order based on false information. *Hale v. Harney*, 786 F.2d 688, 690–91 (5th Cir. 1986) (citing *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (Well-established case law precludes plaintiffs from seeking review of state court actions in federal district courts through

civil rights suits)). Because the date on the writ and order show they were issued before the Defendants' took custody of L.S. The Plaintiff's allegations that Defendants entered her home without a valid writ are insufficient to maintain a § 1983 claim for violation of Fourth Amendment rights against unlawful search. The Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's claim unlawful search and entry claim because the Complaint fails to state sufficient facts showing the claim is facially plausible. *See Aschroft*, 556 U.S. at 678.

Even if Plaintiff sufficiently alleged her claim for unlawful search and entry, qualified immunity shields Defendants from liability. Defendant Catalan asserted qualified immunity as an affirmative defense in his answer and the other Defendants asserted qualified immunity in their motions to dismiss.

Defendants allege qualified immunity shields them from any liability under Plaintiff's unlawful search and seizure claim. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Thus, searches and seizures in a home "without a warrant are presumptively unreasonable." *Stuart*, 547 U.S. at 403. A properly issued court order to take a child into custody based on Texas Family Code § 262.102 meets the Fourth Amendment requirement for an arrest warrant and a search warrant to search the child's home to find the child. *Wenecke v. Garcia*, 591 F.3d 386, 395 (5th Cir. 2009); TEX. FAM. CODE § 262.102 (West Supp. 2017). Thus,

the writ of attachment to take custody of Plaintiff's child, if valid, allowed Defendants to enter the child's home to look for the child.

At the motion to dismiss stage, a court may consider documents that are public record. *Green v. JPMorgan Chase Bank, N.A.*, 937 F. Supp.2d 849, 866 (N.D. Tex. 2013) (Godbey, J.). Here, Plaintiff's Complaint alleges police lacked a valid writ of attachment to allow them to enter her home and take custody of her child. Defendants Hughes and Borton attached the Order for Issuance of Writ of Attachment, the Writ of Attachment, and the Order for Protection of a Child in an Emergency and Notice of Hearing to their amended motion to dismiss. Because a number of Plaintiff's claims center on the lack of a valid writ of attachment, these documents are central to Plaintiff's claims and referred to in her Complaint. These documents are also public record as court documents. The Court, therefore, considers these documents along with the pleadings in determining the Defendants' motion to dismiss. *See id; see also Collins*, 224 F.3d at 498.

Because the Complaint does recognize the writ existed, the issue to be determined in the first step of the qualified immunity test is to determine whether that writ was valid. Plaintiff contends the writ of attachment was not valid because it failed to include certain statutorily required language. Under § 262.102(d), a temporary order or writ of attachment for a child must include the following language:

> "YOU HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY. IF YOU ARE INDIGENT AND UNABLE TO AFFORD

AN ATTORNEY, YOU HAVE THE RIGHT TO REQUEST THE APPOINTMENT OF AN ATTORNEY BY CONTACTING THE COURT AT [ADDRESS], [TELEPHONE NUMBER]. IF YOU APPEAR IN OPPOSITION TO THE SUIT, CLAIM INDIGENCE, AND REQUEST THE APPOINTMENT OF AN ATTORNEY, THE COURT WILL REQUIRE YOU TO SIGN AN AFFIDAVIT OF INDIGENCE AND THE COURT MAY HEAR EVIDENCE TO DETERMINE IF YOU ARE INDIGENT. IF THE COURT DETERMINES YOU ARE INDIGENT AND ELIGIBLE FOR APPOINTMENT OF AN ATTORNEY, THE COURT WILL APPOINT AN ATTORNEY TO REPRESENT YOU."

TEX. FAM. CODE § 262.102 (West Supp. 2017). Plaintiff contends the writ of attachment was invalid without this language. The Writ of Attachment referenced the court order issuing the writ. The court order issuing the writ of attachment included the above required language from § 262.102(d). Thus, a reasonable officer reviewing the documents could determine the writ included the necessary language. Catalan alleges he and his supervisor reviewed the writ and believed it was proper.

Plaintiff also alleges the writ was invalid because Borton provided false or fraudulent information to the judge to show probable cause for the writ. When a plaintiff alleges Fourth Amendment violation based on a search pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," qualified immunity does not apply to shield officers from liability. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The probable cause supporting the warrant must be so

lacking that "official belief in its existence [is] entirely unreasonable." *U.S. v. Leon*, 468 U.S. 987, 923 (1984). While Plaintiff alleges the warrant was based on false information, case law precludes a federal court from reviewing state court action. *Hale*, 786 F.2d at 690–91. The proper course of action is to seek review within the state court system. *Id*. To the extent Plaintiff argues a reasonable officer could not find the writ facially valid, Defendant Catalan alleges he and his supervisor reviewed the writ and found it was proper. Plaintiff does not allege specific facts showing the writ was facially unreasonable. Thus, Defendants' reliance on the writ of attachment was not entirely unreasonable.

Because the Complaint failed to state sufficient facts showing Plaintiff's unlawful search and entry claim is facially plausible, the Court **DISMISSES** Plaintiff's unlawful search and entry claim. *See Aschroft*, 556 U.S. at 678. Even if Plaintiff had sufficiently stated her claim, Plaintiff did not establish Defendants' reliance on the writ of attachment was objectively unreasonable in light of the clearly established law. *See Club Retro, L.L.C.*, 568 F.3d at 194. Thus, qualified immunity shields Defendants from liability on Plaintiff's unreasonable search and entry claim.

### B. False Arrest Claim

Defendants Catalan, Robinson, and Whitten argue Plaintiff's Complaint fails to state a claim for false arrest or, alternatively, qualified immunity shields them from liability. A Fourth Amendment false arrest claim turns on whether the defendants had

probable cause to arrest the plaintiff. *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 423 (5th Cir. 2013).

Plaintiff alleged a false arrest claim against Defendants Catalan, Robinson, and Whitten. Her Complaint alleged these Defendants arrested Plaintiff for interference with child custody without a warrant and without probable cause. However, Plaintiff does not deny she resisted the Defendants when they attempted to take L.S. pursuant to the writ of attachment. Plaintiff's Complaint states she "[r]effused to surrender L.S.," "[s]creamed 'You will not take my child!'" and used profanity against the Defendants. Because the writ of attachment authorized Defendants to take custody of L.S., as discussed in Section IV. A., and Plaintiff's Complaint does not deny she resisted Defendants' attempt to take custody of L.S., Plaintiff has not alleged sufficient facts to show her claim for false arrest is facially plausible.

Even if Plaintiff had sufficiently alleged her false arrest claim, Plaintiff did not established the Defendants acted objectively unreasonably under clearly established law by arresting her. Qualified immunity applies to shield defendants from liability in a § 1983 false arrest claim when defendants show they had probable cause to arrest the plaintiff. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 654 (5th Cir. 2004). An officer has probable cause and will be shielded from liability "if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [the officer] was aware, there was a fair probability that [the plaintiff] had committed or was committing an offense." *Haggerty*, 391 F.3d at 656.

Qualified immunity for Fourth Amendment false arrest claims recognizes that law enforcement officers can "reasonably, but mistakenly, conclude probable cause is present." *Crostley*, 717 F.3d at 423. Thus, qualified immunity is a "significant hurdle" for the plaintiff to overcome. *Id*.

Here, officers entered based on a writ that they reasonably believed provided probable cause and authority to enter the home and take custody of the child. Defendants allegedly informed Plaintiff that they had a writ to take her child. Defendants allegedly failed to show Plaintiff the writ despite repeated requests. However, Plaintiff states Defendants did show her father the writ. Plaintiff refused to turn over the child and began angrily yelling and cursing at Defendants. The confrontation moved into the kitchen, where an ordinary reasonable officer would expect there to be knives and other such dangerous weapons close at hand that Plaintiff could easily grab. *See Ross v. Donkocik*, 60 Fed. App'x 409, 411 (3d Cir. 2003) (noting that "the kitchen provides access to potentially dangerous weapons, like knives."). Given this location, Plaintiff's aggressive response to Defendants and the writ, and the undoubtedly heated circumstances associated with removing a child from the mother's custody, a reasonable officer under these circumstances would believe probable cause existed to arrest Plaintiff for interfering with child custody. Thus, Defendants are shielded from liability on the false arrest claim.

Because the Complaint failed to state sufficient facts showing Plaintiff's false arrest claim is facially plausible, the Court **DISMISSES** this claim. *See Aschroft*, 556

U.S. at 678. Even if Plaintiff had sufficiently stated her claim, Plaintiff did not establish Defendants' arrest was objectively unreasonable in light of the clearly established law. *See Club Retro, L.L.C.*, 568 F.3d at 194. Thus, qualified immunity shields Defendants from liability on Plaintiff's false arrest claim.

## C. Excessive Force Claim

While Plaintiff admits to yelling at the Defendants, she alleges she did not try to flee or make any physical threat towards the Defendants that would provide probable cause for the officers to restrain her in that manner.

Defendants Catalan and Robinson argue Plaintiff has not stated a claim for excessive force. To properly plead a Fourth Amendment claim for excessive force, a plaintiff must sufficiently allege "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Here, Plaintiff alleges Defendants Robinson and Catalan grabbed Plaintiff, forcefully pinned her against the kitchen counter, crushed her pregnant abdomen against the counter, and Defendant Robinson punched her in the back without provocation. Plaintiff alleges her stomach and back were bruised by Defendants Catalan and Robinson actions. Thus, Plaintiff alleged sufficient facts to make her excessive force claim plausible. Defendants Catalan and Robinsons' motion to dismiss for failure to state a claim of excessive force fails.

Defendants Catalan and Robinson alternatively argue they are shielded from liability on the excessive force claim based on qualified immunity. Qualified immunity applies to a Fourth Amendment excessive force claim when the court determines the force involved in the seizure was reasonable given the circumstances. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). An officer's authority to arrest an individual "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. In determining the reasonableness of the officer's actions, the court should consider the particular facts and circumstances of the case, the severity of the crime at issue, and whether the suspect posed an immediate threat to the safety of the officer or others. *Id*. The court determines reasonableness based on what a reasonable officer would do on the scene with the knowledge the officer had at the time, not based on "the 20/20 vision of hindsight." *Id*. The reasonableness test also considers that police officers often must "make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving." *Id*. at 396–97. The reasonableness standard is an objective standard asking whether the officer's actions were "objectively reasonable" given the circumstances, without considering the officer's underlying intent or motivation. *Id*. at 397.

The circumstances here suggest a reasonable officer in the same situation with the same knowledge as the Defendants would find it reasonable to use force to restrain Plaintiff. Because the officers were there to remove the child from Plaintiff's custody, reasonable officers could anticipate a heated situation and high emotions

from Plaintiff. Plaintiff refused to let officers enter her home despite their statement they had a writ, ultimately failing to block their entry. The confrontation continued into the kitchen, where reasonable officers would believe there would be knives and other objects that could be used as weapons. Also, reasonable officers could believe Plaintiff knew where the knives and other objects were kept and could quickly access them. Plaintiff yelled profanity at the officers and screamed that they could not take her child. These statements could lead a reasonable officer to believe Plaintiff would take action based on her statements and her earlier attempts to block Defendants from entering her home. In this "tense, uncertain, and rapidly evolving," situation, a reasonable officer could conclude Plaintiff would take physical action to prevent the officers from taking her child. As a precaution, a reasonable officer, making a split-second decision, may have found it necessary to use some physical coercion to subdue Plaintiff. A reasonable officer's restraint of Plaintiff in this situation may include holding Plaintiff against the kitchen counter and trying to restrain her arms from movement. The Court concludes Defendants Catalan and Robinson's force was reasonable and did not violate the Fourth Amendment. Qualified immunity shields Defendants Catalan and Robinson from liability on the claim for excessive force.

Because the Complaint failed to state sufficient facts showing Plaintiff's excessive force claim is facially plausible, the Court **DISMISSES** this claim. *See Aschroft*, 556 U.S. at 678. Even if Plaintiff had sufficiently stated her claim, Plaintiff did not establish Defendants' force in the course of arrest was objectively

unreasonable in light of the clearly established law. *See Club Retro, L.L.C.*, 568 F.3d at 194. Thus, qualified immunity shields Defendants from liability on Plaintiff's unreasonable search and entry claim.

### D. Manufacture of Probable Cause Claim

Defendants Catalan, Robinson, Whitten, Hughes and Borton argue Plaintiff's Fourth Amendment claim for manufacture of probable cause is duplicative of Plaintiff's false arrest claim and, alternatively, qualified immunity shields them from liability.

#### 1. Defendants Catalan, Robinson, and Whitten

Plaintiff's manufacture of probable cause claim is duplicative of Plaintiff's claims for unlawful search and entry and for false arrest. In Section IV. A. and B., the Court Dismissed Plaintiff's claims for unlawful search and entry and for false arrest, respectively. Because the Court already discussed and dismissed the search and entry and arrest claims above, the Court **DISMISSES** the manufacture of probable cause claim as to Defendants Catalan, Robinson, and Whitten as duplicative.

#### 2. Defendants Hughes and Borton

Plaintiff also asserts her Fourth Amendment manufacture of probable cause claim against Defendants Hughes and Borton. Plaintiff failed to sufficiently state a Fourth Amendment manufacture of probable cause claim against Hughes and Borton because her complaint only provides conclusory statements. A complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the

defendant. *Twombly*, 550 U.S. at 555. A complaint must allege facts because a recitation of elements "supported by mere conclusory statements do[es] not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff's complaint does not specify how her manufacture of probable cause claim applies to Defendants Hughes and Borton. In her factual allegations, Plaintiff alleges Borton "falsely, fraudulently, and wrongfully alleged" Plaintiff's child was in danger during an *ex parte* hearing. Plaintiff does not allege what information Borton gave—false or otherwise—or why any of that information was false. Plaintiff merely makes a conclusory statement as to the possibility of Defendant Borton giving false information. Even Plaintiff's response failed to state what false information or lies Borton told the judge to cause the writ of attachment to issue.

Plaintiff also alleges Defendant Borton and Hughes lied to the grand jury, presumably to support her claim for manufactured probable cause. This statement also is nothing more than a mere conclusory statement, stating a possibility.

Plaintiff's conclusory allegation that Hughes and Borton lied and provided false information to manufacture probable cause, without any facts or clear indication of what specific statements she is referencing, is not sufficient to put Hughes and Borton on notice of Plaintiff's claims. The Court concludes Plaintiff's claim for manufacture of probable cause against Defendants Hughes and Borton fails to state a claim and is **DISMISSED**.

Even if Plaintiff sufficiently alleged manufacture of probable cause against them as to the grand jury indictment, Defendants Hughes and Borton have absolute

immunity as to any grand jury testimony. The Supreme Court has recognized absolute immunity applies to shield a government agent from liability when the agent testifies before a grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 368–69 (2012). The Supreme Court recognized that factors similar to giving lay witnesses absolute immunity in grand jury testimony applied to extending absolute immunity to law enforcement officers. *Id*. This is not to say that police officers are immune from repercussions from giving false testimony because the officer could still receive employment-related sanctions. *Id*. But falsely accused individuals are not without recourse because other § 1983 claims protect an individual from government overreach and actions taking place outside of grand jury testimony are not given absolute immunity. *Id*. Thus, Defendants Hughes and Borton are shielded from liability for their grand jury testimony based on their absolute immunity.

### E. Fabrication of Evidence Claims against Lopez and Campbell

Plaintiff alleges a Fourth Amendment fabrication of evidence claim against Defendant Lopez and Campbell for their actions in booking and documenting Plaintiff into jail.

#### 1. Failure to State a Claim as to Lopez

Plaintiff alleges Lopez entered Plaintiff's height and weight incorrectly, making her "significantly larger than her actual height and weight." Plaintiff alleges Lopez had access to biometrics equipment to correctly determine Plaintiff's height and weight. However, Plaintiff does not state whether Lopez used this equipment and

copied the information incorrectly or simply estimated Plaintiff's height and weight. Plaintiff alleges her height is "approximately five-feet two-inches" and "approximately on hundred fifty-five (155) pounds" on the date of her arrest. Plaintiff alleges Lopez purposefully entered the incorrect information to make Plaintiff appear more threatening and to make it appear that the bruising could not be from the officers holding Plaintiff against the kitchen counter. Plaintiff argues this violates the Fourth Amendment, protecting her from arrest without probable cause, because Lopez and Campbell falsified this information to perpetuate and protect Defendants' Catalan, Whitten, and Robinson's allegedly false arrest.

To state a § 1983 claim, there must be a violation of constitutional law. A plaintiff's Fourth Amendment rights are violated when a government agent uses "fabricated evidence *to secure* a person's arrest." *Cole v. Carson*, 802 F.3d 752, 764 (2015) (reversed on other grounds) (emphasis added). Here, Plaintiff alleges Defendant Lopez entered Plaintiff's height and weight into the jail system *after* Plaintiff had already been arrested. Because Plaintiff was already under arrest, the alleged false information could not have established probable cause for an arrest. Because the Complaint failed to state sufficient facts showing Plaintiff's fabrication of evidence claim as to Lopez is facially plausible, the Court **DISMISSES** this claim. *See Aschroft*, 556 U.S. at 678.

### 2. Failure to State a Claim as to Campbell

Plaintiff claims Campbell violated the Fourth Amendment by fabricating evidence when Campbell failed to document Plaintiff's alleged bruises and pain at the time she was processed into jail after her arrest.

Plaintiff fails to state a Fourth Amendment claim for fabricating evidence against Campbell. As previously stated, the Fourth Amendment protects an individual from "pretrial use of fabricated evidence to *secure* a person's arrest." *Cole*, 802 F.3d at 764 (2015) (emphasis added). Plaintiff does not explain how failing to take photographs of bruises relates to the officers' allegedly fabricating probable cause. As with the same claim as Defendant Lopez, at the time Campbell processed Plaintiff into the jail, she was already under arrest. Any alleged failure of Campbell to photograph the bruises and document the pain would have had no effect on Plaintiff's arrest which was based on her interference with child custody and threatening officers. Because any alleged failures of Campbell during Plaintiff's intake had no bearing on the probable cause for Plaintiff's arrest, Plaintiff fails to state a claim against Campbell for fabrication of evidence. This claim is **DISMISSED.**

Plaintiff argues the lack of photographs covered up Defendant officer's use of force. Even assuming this argument had merit, a claim for fabrication of evidence under the Fourth Amendment is not the proper basis to bring such a claim. *See id*. (The Fourth Amendment fabrication of evidence claim applies in instances where government agents fabricate evidence so that they can arrest someone, not so that they can cover up some alleged nefarious action after the arrest has occurred.).

### F. Malicious Prosecution Claim

Defendants argue Plaintiff fails to state a Fourth Amendment claim for malicious prosecution against Defendants Catalan, Robinson, Whitten, Hughes, and Borton because she has not sufficiently pleaded facts identifying the specific constitutional right that was violated.

Plaintiff's complaint alleges Defendants maliciously initiated a criminal case against Plaintiff without probable cause. Plaintiff does not, however, identify what specific constitutional right was violated in connection with the alleged malicious prosecution.

Malicious prosecution is not a standalone claim if there is no violation of constitutional rights; "to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). A malicious prosecution claim alleging a defendant caused "charges to be filed without probable cause will not without more violate the Constitution." *Id*. at 953. A malicious prosecution claim without an asserted constitutional violation "states no constitutional claim." *Id*. Plaintiff "[m]ust look to the explicit text of the Fourth Amendment as a source of protection for the 'particular sort of government behavior at issue.'" *Id*.

Here, Plaintiff's malicious prosecution does not identify what constitutional right was violated. Plaintiff simply states Defendants caused charges to be brought without probable cause. Without more, Plaintiff has not sufficiently pleaded a

malicious prosecution claim and this claim must be dismissed. *See Casetllano*, 352 F.3d at 953; *see also Gonzalez v. City of Corpus Christi, Tex.*, Civ. Action No. C-10-321, 2011 WL 147741, at *2 (S.D. Tex. Jan. 18, 2011) (asserting claim for malicious prosecution based on charges being filed without probable cause is not claim for malicious prosecution under § 1983).

In her response to Defendants' motion to dismiss, Plaintiff alleges her Complaint "implicates" federal constitutional violations to support her malicious prosecution claim. Simply stating this claim implicates a constitutional violation is not sufficient because "the petitioner must look to the explicit text of the Fourth Amendment as a source of protection for the 'particular sort of government behavior.'" *Castellano*, 352 F.3d at 953. Here, Plaintiff did not explicitly cite the text of the Fourth Amendment as a source for her malicious prosecution claim. Plaintiff did not allege what particular government behavior violated her Fourth Amendment right giving rise to the alleged malicious prosecution.

Even if Plaintiff "implicated" a constitutional violation, the Court has already dismissed all of Plaintiff's Fourth Amendment claims. Thus, Plaintiff alleged a standalone malicious prosecution claim, which cannot survive without "rest[ing] upon a denial of rights secured under federal not state law." *Id.* at 942.

The Fifth Circuit specifically held that a malicious prosecution claim also alleging a prolonged detention or an alleged Fourth Amendment violation does state a claim. *Whittington v. Maxwell*, 455 Fed. App'x 450, 457–58 (5th Cir. 2011). In her

response, Plaintiff also argues her malicious prosecution claim is supported by her prolonged incarceration after being falsely arrested. Plaintiff failed plead a claim for prolonged pretrial incarceration or detention. The only allegation arguably related to her pretrial incarceration is that she was in jail for six days. This statement alone falls far short of stating a claim for prolonged incarceration to support her malicious prosecution claim.

Because Plaintiff's Complaint merely presents a conclusory recitation of her malicious prosecution claim and because all the "implicated" constitutional violations are dismissed, The Court **DISMISSES** Plaintiff's malicious prosecution claim against Defendants Catalan, Robinson, Whitten, Hughes, and Borton. *See Twombly*, 550 U.S. at 555.

### G. Procedural Due Process Violation Claim

Plaintiff alleges a Fourteenth Amendment claim for procedural due process violation against Defendants Hughes and Borton. The Complaint alleges Borton and Hughes violated Plaintiff's fundamental right for the care, custody, companionship, and control of her children by preventing her from participating in the *ex parte* hearing that resulted in a county judge issuing an allegedly invalid writ of attachment.

Plaintiff has failed to state a claim for violation of procedural due process. The Fifth Circuit has held that Texas Family Code § 262.102, authorizing an *ex parte* hearing and issuance of an emergency writ of attachment in limited situations, meets procedural due process requirements. *Wernecke v. Garcia*, 591 F.3d 386, 395 (5th Cir.

2009). Plaintiff does not allege the proper procedure was not followed. Because § 262.102 does not violate procedural due process rights and because there are no allegations the proper process was not followed, Plaintiff has failed to state a claim. Thus, Plaintiff's procedural due process claim is **DISMISSED**.

Plaintiff's response to the motion to dismiss convolutedly argues the hearing procedures were not properly followed because Borton allegedly provided false information to secure the *ex parte* hearing and writ of attachment. Despite this argument in her response brief, Plaintiff's Complaint does not allege her due process claim is based on Borton's alleged false information to fraudulently secure the *ex parte* hearing.

Even assuming Plaintiff had alleged her procedural due process claim based on Borton allegedly using false information to secure the ex parte hearing, Plaintiff's claim would be barred. These allegations ask the court to review the county court's decision to issue the writ of attachment by determining whether Borton properly provided probable cause. Well-established case law precludes plaintiffs from seeking review of state court actions in federal district courts through civil rights suits. *Hale*, 786 F.2d at 690–91 (citing *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). Even when the plaintiff does not explicitly seek the district court's review of a state court's decision, the federal court cannot review constitutional claims that are "inextricably intertwined with the state court's

grant or denial of relief." *Hale*, 786 F.2d at 691. "Judicial errors committed in state courts are for correction in the state court system." *Id*.

In a case similar to Plaintiff's, the plaintiffs claimed that child protective services took custody of her children without probable cause based on false allegations and lies to child protective services investigators. *Jernigan v. Allen*, No. 4:10-2744, 2011 WL 4373333, *2 (S.D. Tex. Aug. 30, 2011). The district court found that the plaintiffs' Fourth and Fourteenth Amendment claims based on "unspecified lies" were "inextricably intertwined with the state court order." *Id*. at *3. Thus, the district court dismissed the plaintiff's claims as an improper collateral attack on a state court order. *Id*.

Here, Plaintiff alleges Borton violated her procedural due process rights by allegedly lying to the state judge to secure an *ex parte* hearing and allegedly lying to establish probable cause to obtain the writ of attachment. These alleged lies and fabricated probable cause are inextricably intertwined with the state court's decision to issue a writ of attachment. Plaintiff's procedural due process claim is a collateral attack on the state court's order and, therefore, barred. *Hale*, 786 F.2d at 691. The proper manner for Plaintiff to seek judicial review of the *ex parte* hearing is through the state court system. In her response, Plaintiff acknowledges a full adversary hearing on child custody occurred within two weeks of the *ex parte* hearing and that DFPS returned her children within two months. These acknowledgments indicate Plaintiff sought and received relief from the order issued at the *ex parte* hearing.

Plaintiff failed to allege sufficient facts to make her procedural due process claim plausible, and, therefore, her claim must be **DISMISSED.** Moreover, Plaintiff's claim is an improper request for review of a state court's decision and is barred.

### H. Substantive Due Process Violation and Interference with Mother-Child Relationship Claim

Plaintiff asserts claims for both substantive due process violations and interference with mother-child relationship claims against Defendants Hughes and Borton. Plaintiff merges these two similar claims in her response, and so for purposes of the Court's analysis, Plaintiff's substantive due process claim and the interference with the mother-child relationship claim will be analyzed together.

There is a constitutional right to family integrity, allowing the parents "the companionship, care, custody, and management of [their] children" without government interference. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999). When a child is removed from a parent's custody with a court order or a warrant, the parent's constitutional rights are not violated. *Wernecke v. Garcia*, 591 F.3d 386, 396 (5th Cir. 2009). As discussed above, a writ of attachment ordering emergency seizure of a child under Texas Family Code § 262.102 meets the warrant requirement for search and seizure. *Id*. at 395. The Fifth Circuit held it "reasonable and permissible for state workers in possession of a facially valid temporary custody order" to enter a child's home and take possession of the child. *Id*.

As discussed in Section IV. G., the Court is barred from reviewing state court action. *Hale*, 786 F.2d at 690–91. Defendants Borton and Hughes took custody of Plaintiff's child pursuant to a court order and writ of attachment, which is "reasonable and permissible." *Wernecke*, 591 F.3d at 396. Plaintiff failed to allege sufficient facts to plausibly show Defendants Borton and Hughes violated her rights by removing her child with a writ of attachment, and, therefore, Plaintiff's substantive due process claim and interference with the mother-child relationship claim are **DISMISSED**.

Even if Plaintiff sufficiently alleged her claims, qualified immunity shields Defendants Borton and Hughes from liability. As discussed in Section IV. A., a reasonable government officer could believe the order and writ authorizing DFPS to take temporary custody of the child was valid. *See U.S. v. Leon*, 468 U.S. 987, 923 (1984). Under binding Fifth Circuit case law, it was "reasonable and permissible for state workers in possession of a facially valid temporary custody order" to enter a child's home and take possession of the child. *Wernecke*, 591 F.3d at 396. Thus, Defendants Borton and Hughes acted reasonably by relying on the facially valid court order and writ of attachment when they took custody of Plaintiff's child, and qualified immunity shields them from liability. *Id*.

To the extent Plaintiff's claim is based on DFPS investigators Borton and Hughes' seizure of her child pursuant to writ issued at an *ex parte* hearing, Plaintiff failed to allege how the court procedure did not comply with due process. Borton and

Hughes allegedly seized Plaintiff's new born, L.H., three days after L.H.'s birth. Plaintiff claims L.H. was seized without due process, interfering with her mother-child relationship. However, the state court order from March 13, 2015, indicates this seizure was the result of a court proceeding in which Plaintiff participated. The Court properly takes judicial notice of this order as a matter of public record in determining this motion to dismiss without converting the motion to one for summary judgment. *Green*, 937 F. Supp.2d at 866. (N.D. Tex. 2013). Borton and Hughes seized L.H. allegedly pursuant to the March 13th order.

Plaintiff has not alleged how the court procedure did not comply with due process. While Plaintiff refers the Court to *Gates v. Tex. Dep't of Protective & Regulatory Servs.* to argue a full hearing is required before depriving a parent of custody of her child, this case is easily distinguishable. 537 F.3d 404, 434 (5th Cir. 2008). In *Gates*, social workers removed children from the parents' custody without a court order, but here, Borton and Hughes removed Plaintiff's children pursuant to a court order. *Id*. Without further allegations from Plaintiff, Defendants Borton and Hughes acted as reasonable DFPS investigators in following the court order and seizing L.S.

Because Borton and Hughes took custody of L.S. and L.H. pursuant to a court order, Plaintiff failed to allege her claims for substantive due process and interference with the mother-child relationship. Even if she had sufficiently alleged her claims, Defendants Borton and Hughes acted as reasonable DFPS investigators by complying with the court orders and a writ. Thus, Defendants Hughes and Borton are shielded

from liability on these two claims. Furthermore, to the extent this claims asks the court to review state judicial proceedings to determine whether the issuance of the writ was based on false probable cause, the district court cannot properly review the state court's decision as previously discussed. *Hale*, 786 F.2d at 690–91. Thus, the Court **DISMISSES** Plaintiff's substantive due process claim and interference with mother-child relationship claim.

## I. Bystander Liability Claim

Plaintiff alleges Defendants Catalan, Robinson, and Whitten knew the other officers were violating Plaintiff's constitutional rights, and these Defendants chose not to prevent or stop the harm. Plaintiff alleges Defendants Whitten, Catalan, and Robinson were present at the scene when her child was seized at her home. After Defendants allegedly enter the house without a valid writ, Plaintiff claims Defendant Catalan restrained her and pushed her against the counter using excessive force, and then Defendant Robinson allegedly punched Plaintiff. During this event, Plaintiff alleges these Defendants saw each other committing these alleged violations, knew the actions were unlawful, and had the opportunity to prevent the actions but failed to do so.

Under a § 1983 claim for bystander liability, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another

officer's use of excessive force may be liable." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The elements of bystander liability are: "the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

A plaintiff successfully brings a claim for bystander liability "only where the plaintiff can allege and prove 'another officer's use of excessive force.'" *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014) (abrogated in part on other grounds). When qualified immunity shields an officer from liability for alleged excessive force, another officer at the scene cannot be liable under bystander liability because the action was reasonable. *See Callaway v. Travis Cnty.*, No. A-15-CA-00103-SS, 2016 WL 4371943, *9–11 (W.D. Tex. July 28, 2016). Thus, if the court finds qualified immunity applies to the alleged underlying unconstitutional act, the court may properly dismiss the bystander liability claim. *Id*.

Here, Plaintiff bases her bystander liability claim on her excessive force claims and unlawful search and entry claims. As previously addressed, Plaintiff's Complaint fails to state a claim for unlawful search and entry and the Court finds qualified immunity shields these Defendants from the excessive force and unlawful search and entry claims. Because the Court dismissed these two claims, these defendant officers cannot be liable for bystander liability. *See Kitchen*, 754 F.3d at 481 ("Defendants-Appellees correctly observe that bystander liability arises…only where the plaintiff

can allege and prove another officer's use of excessive force."). Because Plaintiff failed to sufficiently plead her bystander liability claim, the Court **DISMISSES** this claim against Defendants Catalan, Robinson, and Whitten.

### J. Denial of Medical Care Claim

Plaintiff alleges Defendant Campbell was deliberately indifferent to Plaintiff's medical needs related to her pregnancy and alleged bruises. The Complaint alleges a claim based on Campbell's episodic acts or omissions, not a claim based on general jail conditions or practices. Campbell argues Plaintiff did not sufficiently plead her Fourteenth Amendment claim for denial of medical care.

The Fifth Circuit has found no significant difference between a pretrial detainee and a convicted inmate regarding medical care while in jail. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). When the claim is based on a jail officer's episodic acts or omissions, courts consider (1) whether the alleged harm is "objectively, sufficiently serious" such that it results in "the denial of the minimal civilized measure of life's necessities" and (2) "whether the official had a culpable state of mind in acting or failing to act." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Harev. City of Corinth, Miss.*, 74 F.3d 633, 640, 643 (5th Cir. 1996) (en banc).

A plaintiff must allege not just that a substantial risk of serious harm existed but that the officer was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [the officer] must also draw the

inference." *Farmer*, 511 U.S. at 836. To show the officer acted or failed with a culpable state of mind, a plaintiff must show the officer acted with deliberate indifference by alleging "the state official knew of and disregarded an excessive risk to the inmate's health or safety." *Gibbs*, 254 F.3d at 549. Deliberate indifference "is more than mere negligence in failing to supply medical treatment," and a plaintiff's "disagreement with medical treatment alone" is not sufficient to allege a claim. *Id*.

Here, Plaintiff alleges Defendant Campbell saw her bruises but failed to document them or to take actions regarding them. Plaintiff also alleges Defendant Campbell allegedly knew that any injury to a late-term pregnant woman puts the woman and unborn baby at risk of injury or death. Plaintiff fails to allege any facts regarding Campbell's training or education, medical or otherwise, to know what Campbell may or may not have known about pregnant women and medical issues relating to injuries of pregnant women. Plaintiff does not provide any facts of what specific serious harm could have resulted or did result from her bruises other than the broad conclusory statement that any harm risks injury or death to the pregnant woman and/or her unborn baby. Plaintiff does not assert any allegations that bruising alone has any medical significance such that it indicates a substantial risk of serious harm. Plaintiff also alleges she was not provided sufficient bedding and clothing to provide a safe environment for a pregnant woman. Again, Plaintiff does not allege how this failure caused a substantial risk of serious harm. Thus, Plaintiff's Complaint

fails to allege she was subject to a substantial risk of harm and that Campbell was aware of the substantial risk of harm.

Even if Plaintiff had properly alleged a substantial risk of harm, Plaintiff failed to sufficiently allege Campbell was deliberately indifferent to Plaintiff's medical needs. The Complaint makes conclusory allegations that Campbell was deliberately indifferent to Plaintiff's medical needs and subjectively intended to cause harm to Plaintiff. But Plaintiff alleges no facts to support these conclusory allegations of Campbell's deliberate indifference and subjective intent to cause Plaintiff harm. Merely stating the elements of a claim in a conclusory fashion is not enough to sufficiently allege a claim. *Twombly*, 550 U.S. at 555. Because Plaintiff fails to allege sufficient facts to support her conclusory statements that Campbell acted with deliberate indifference, she fails to state a Fourteenth Amendment claim for denial of medical care. Thus, the Court **DISMISSES** the claim for denial of medical care.

### K. Denial of Equal Protection Claim

Plaintiff alleges a Fourteenth Amendment claim for violation of equal protection against the County and Campbell. Plaintiff alleges she is a member of the protected class of pregnant mothers, victims of police brutality, or is a class of one.

The Equal Protection Clause under the Fourteenth Amendment requires the government to treat all similarly situated people alike. *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To sufficiently allege an equal protection claim, a plaintiff must allege she is a member of a protected class or is a

"class of one." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015). A plaintiff may assert "an equal protection claim based on a 'class of one.'" *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 619 (N.D. Tex. 2016) (quoting *Stotter v. Univ. Tex. at San Antonio*, 508 F.3d 812, 823–24 (5th Cir. 2007). "To do so, he must show that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id*.

A plaintiff must allege the officers treated her differently because of her membership to the protected class and that this unequal treatment was due to a discriminatory intent. *Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 228 (5th Cir. 2008). "A discriminatory purpose implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004). Thus, the plaintiff must allege sufficient facts to show the officers treated the plaintiff differently than non-class members and did so with the intent to discriminate against and adversely affect the protected class to which the plaintiff belongs. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012). To sufficiently plead a discrimination claim, the complaint must offer more than "labels and conclusions" to support the plaintiff's claim. *Twombly*, 550 U.S. at 557. A complaint fails to plead a discrimination claim when the complaint does not "contain any factual allegations

sufficient to plausibly suggest [defendants'] discriminatory state of mind." *Iqbal*, 556 U.S. at 683.

Plaintiff alleges the County and Campbell in her individual capacity intentionally denied her access to certain basic services and kept her in isolation, whereas other non-class member inmates were provided these services. Plaintiff does not allege the Defendants denied her access with a discriminatory intent let alone allege facts indicating Defendants acted with discriminatory intent. Instead, Plaintiff simply concludes Defendants treated her differently due to discrimination. Plaintiff also asserts other non-class member inmates received these services she was allegedly denied, but she does not allege any facts to support this conclusory allegation.

Plaintiff's Complaint does not sufficiently plead a discrimination claim as it does not contain any allegations, factual or otherwise, that Defendants had a discriminatory state of mind. Plaintiff simply states the elements of an equal protection claim, which is insufficient. *Twombly*, 550 U.S. at 555. Because Plaintiff failed to allege facts to support discriminatory intent, Plaintiff failed to state a claim for denial of equal protection.

The Court **DISMISSES** Plaintiff's equal protection claim.

**L. Stigma-Plus Libel Per Se Claim**

Plaintiff alleges a stigma-plus claim under § 1983 and the Fourth Amendment, pleading Meeks, in his individual capacity, injured her reputation by making allegedly false statements to the media. Meeks argues Plaintiff's claim should be dismissed for

failure to state a claim because there is no Fourth Amendment stigma-plus claim, or, alternatively, her claim should be dismissed because of Meeks' qualified immunity.

To bring a § 1983 Fourteenth Amendment claim alleging an officer injured the plaintiff's reputation, a plaintiff must allege the injury she suffered was connected to the violation of a constitutional guarantee, such as the loss of the plaintiff's liberty or property. *Paul v. Davis*, 424 U.S. 693, 700–01 (1976). This claim arises under the Fourteenth Amendment. *See Brown v. Manning*, 244 F.3d 133, at *1 (5th Cir. 2000). The Fifth Circuit also recognizes a claim under § 1983 alleging a stigma plus an infringement of some other interest. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). In a stigma-plus claim, the plaintiff must allege "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant." *Id*. The plaintiff must also "establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been incorporated." *Id*. at 701–02.

Plaintiff brings her stigma-plus claim under the Fourth Amendment, not the Fourteenth Amendment. Plaintiff must connect her stigma-plus claim with a constitutional violation, such as officers violating her Fourth Amendment rights by allegedly entering her home and arresting her without a valid warrant or probable cause. However, the stigma-plus claim still arises under the due process claim of the Fourteenth Amendment and requires a connection the loss of a life, liberty, or

property right. *See id*. Plaintiff fails to allege her stigma-plus claim arose under the Fourteenth Amendment. Thus, Plaintiff has failed to sufficiently state her constitutional claim for injury to her reputation.

Even if Plaintiff had properly alleged her claim under the Fourteenth Amendment, her stigma-plus claim would still be dismissed because Plaintiff failed to allege a constitutional to violation connected to the alleged injury to her reputation to support this claim. As discussed above, a plaintiff must establish a government official sought to remove or significantly alter the plaintiff's life, liberty, or property interest. *Kacal*, 928 F.2d at 701–02. Here, Plaintiff alleges her reputational injury resulted from the Defendants violations connected of her Fourth Amendment rights. But Plaintiff fails to make allegations tying those together. She simply states her injuries "originated" from her Fourth Amendment rights being violated. As discussed above, the Court has dismissed these Fourth Amendment claims either for failure to state a claim or because of qualified immunity. Because Plaintiff has not sufficiently alleged violations to her Fourth Amendment rights, Plaintiff fails to allege a constitutional violation connected to her alleged stigma-plus claim. *See id*.

The Court **DISMISSES** Plaintiff's stigma-plus libel per se claim.

## V. Municipal Liability Claims

To state a claim under § 1983, the plaintiff must allege facts showing she has been deprived of a constitutionally protected right and that the deprivation occurred under color of state law. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir.

2005). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a person of his constitutionally protected rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The unconstitutional conduct complained of "must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (put another way, "there must be both municipal culpability and causation.").

To successfully establish municipal liability, the plaintiff must allege three elements: (1) a policymaker; (2) an official policy; and (3) the policy or custom is the "moving force" behind the violation of constitutional rights. *Id*. (these three factors are necessary in distinguishing a government employee's action causing an individual constitutional violation from constitutional violations identified as caused by the municipality itself). An official policy is defined as:

> 1.  A policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.  A persistent, widespread practice of city officials or employee, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the

> municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

Plaintiff has alleged Meeks is the policymaker. Plaintiff has not alleged that the County has an official policy adopted and put forth by Meeks that violates an individual's constitutional rights. Thus, Plaintiff must show a widespread practice exists that is so common it constitutes a municipal policy.

### A. Denial of Medical Care Claim

The Fourteenth Amendment's Due Process Clause protects a pre-trial detainee's right to medical care. *Carter v. Reach*, 399 Fed. App'x 941, 942 (5th Cir. 2010). As discussed in Section VI. J., a plaintiff can prove a violation of her constitutional right to medical care by alleging a violation based on general jail conditions or based on an individual or episodic act. *Hare*, 74 F.3d at 643. To successfully hold a municipality accountable for "an individual or episodic act" violating due process, the plaintiff must show an employee acted or failed to act with deliberate indifference to the detainee's needs. *Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017). She must allege facts sufficient to support a conclusion of deliberate indifference and substantial harm. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "[T]he facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Id.* (citing *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Once the plaintiff establishes a county employee acted with subjective deliberate indifference in denying the plaintiff

medical care, "the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with the objective deliberate indifference to the detainee's constitutional rights." *Hare*, 74 F.3d at 649 n. 4. Whether the plaintiff has received the treatment or accommodation that she believes she should have received is not the issue. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Nor do negligence, neglect, medical malpractice give rise to a § 1983 cause of action. *Johnson*, 759 F.2d at 1238.

Plaintiff failed to state a denial of medical care claim against the County because she did not allege facts to show Campbell acted with deliberate indifference to Plaintiff's needs. As discussed in Section IV. J., the Court dismissed the denial of medical care claim against Campbell. Without properly alleging Campbell or another County employee acted or failed to act with deliberate indifference to Plaintiff's needs, Plaintiff cannot successfully assert a denial of medical care claim against the County.

Even if Plaintiff sufficiently alleged Campbell acted with deliberate indifference to Plaintiff's needs, the Complaint fails to sufficiently assert a claim against the County for denial of medical care. Plaintiff must have alleged sufficient facts to plausibly show there was a policy maker, official policy, and the policy or custom was the moving force behind the violation of constitutional rights. *Piotrowski*, 237 F.3d at 578. Plaintiff fails to allege Meeks, the alleged policymaker, had actual or constructive knowledge of Campbell's actions or Plaintiff's jail conditions. Plaintiff

does not allege Campbell was the policy maker regarding medical treatment, which would have made her actions the actions of the county. Furthermore, Plaintiff failed to allege any facts indicating the County had a formal policy or a widespread custom to treat detainees in this manner. Because Plaintiff has failed to allege a custom that Campbell followed when she allegedly violated Plaintiff's constitutional rights, Plaintiff failed to allege a Fourteenth Amendment and § 1983 claim against the County for denial of medical care. *See id*.

The Court **DISMISSES** Plaintiff's denial of medical care claim against the County.

### B. Denial of Equal Protection Claim

Plaintiff alleged a Fourteenth Amendment claim for denial of equal protection against Campbell and the County. In Section IV. K., the Court dismissed the denial of equal protection claim against Campbell.

Plaintiff bases her denial of equal protection claim on her treatment in jail, alleging she belongs to two protected classes: pregnant mothers and victims of police brutality. Alternatively, Plaintiff argues she is a class of one. She alleges the Defendants denied her access to basic services based on her class and suffered injury as a result. While Plaintiff alleges this claim in her Complaint, she failed to address it in her response to Defendants' motion to dismiss.

To sufficiently allege an equal protection claim, the plaintiff must allege she she is a member of a class or is a "class of one." *Gil Ramirez Grp., L.L.C. v. Houston*

*Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015). The plaintiff must also allege the officers treated her differently because of her membership in the protected class and that this unequal treatment was due to a discriminatory intent. *Hampton Co. Nat. Sur., LLC*, 543 F.3d at 228. A plaintiff may assert "an equal protection claim based on a 'class of one.'" *Bryan*, 188 F. Supp. 3d at 619 (quoting *Stotter v. Univ. Tex. at San Antonio*, 508 F.3d 812, 823–24 (5th Cir. 2007). "To do so, he must show that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id*.

The plaintiff must allege sufficient facts to show the officers treated the plaintiff differently than non-class members and did so with the intent to discriminate against and adversely affect the protected class to which the plaintiff belongs. *Bowlby*, 681 F.3d at 227. To sufficiently plead a discrimination claim, the complaint must offer more than "labels and conclusions" to support the plaintiff's claim. *Twombly*, 550 U.S. at 557. A complaint fails to plead a discrimination claim when the complaint does not "contain any factual allegations sufficient to plausibly suggest [defendants'] discriminatory state of mind." *Iqbal*, 556 U.S. at 683.

As discussed in Section IV. K., Plaintiff failed to allege a denial of equal protection claim because her Complaint states only conclusory allegations without any factual support to make her claims plausible. Plaintiff does not allege sufficient facts to indicate she was a member of the alleged protected classes of pregnant mothers and victims. Plaintiff does not allege facts showing a discriminatory intent

on the part of the County or a county employee with policy-making authority which would make the County liable. Plaintiff simply concludes Defendants treated her differently due to discrimination. Plaintiff also asserts other non-class member inmates received these services she was allegedly denied, but she does not allege any facts to support this conclusory allegation. Thus, Plaintiff fails to allege sufficient facts to support her denial of equal protection claim.

Even if Plaintiff had alleged facts that sufficiently alleged a discriminatory intent and a protected class membership, she failed to allege a policymaker adopted a policy of treating Plaintiff or a particular class in this manner and failed to allege there was a custom or widespread practice of treating detainees in the manner alleged. Plaintiff did not allege facts showing Campbell acted in accordance with official policy by allegedly denying Plaintiff equal protection. Furthermore, Plaintiff did not allege Campbell is a policymaker, so any alleged actions of Campbell cannot be imputed upon the County. Similarly, Plaintiff did not alleged any facts indicating there was a practice or custom of denying equal protection to detainees or inmates similarly situated to Plaintiff. Thus, the Court **DISMISSES** Plaintiff's denial of equal protection claim.

### C. Stigma-Plus Libel Per Se Claim

Plaintiff alleges a claim for stigma-plus libel per se under § 1983 against the County.

A plaintiff can bring a Fourteenth Amendment claim alleging an officer injured the plaintiff's reputation only by alleging this injury was connected to the violation of a constitutional guarantee, such as the loss of the plaintiff's liberty or property. *Paul v. Davis*, 424 U.S. 693, 700–01 (1976). This claim arises under the Fourteenth Amendment. *See Brown v. Manning*, 244 F.3d 133, at *1 (5th Cir. 2000). The Fifth Circuit recognizes a § 1983 claim alleging a stigma plus an infringement of some other interest. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).

As discussed in the section on the stigma plus claim against Meeks in his individual capacity, Plaintiff failed to allege her stigma-plus claim because she does not allege it arose under the Fourteenth Amendment, as required. *See id.* Furthermore, Plaintiff bases her claim on the infringement of her Fourth Amendment rights via her claims for false arrest, fabrication of probable cause, and excessive force. Because the Court dismissed these claims, Plaintiff did not allege a state actor removed or significantly altered a life, liberty, or property interest protected by the Bill of Rights. Thus, Plaintiff's Complaint fail to state a claim against for stigma-plus libel per se against the County and the Court **DISMISSES** this claim.

### D. Failure to Train, Supervise, Discipline, Discharge Claim

Plaintiff alleges Defendant County maintains a policy of not training its staff and officers. Plaintiff alleges this failure to train resulted in her rights being violated and the County approved or ratified the violations of her rights.

Failure to train may be a "policy" for purposes of municipal liability under § 1983, but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Municipalities are not normally liable for inadequate training, but failure to properly train may be a "policy" if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. A claim for failure to train must assert that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

To properly assert a municipality's training procedure is inadequate, the plaintiff must "allege with specificity how a particular training program is defective." *Zarrow*, 614 F.3d at 170. Deliberate indifference is a very stringent standard, requiring the plaintiff demonstrate proof "that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000). Generally, the plaintiff must establish a pattern of conduct to show deliberate indifference related to a failure to train claim; a showing of deliberate indifference is difficult, though not impossible, to base on a single incident. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). In asserting a

failure to train claim, the plaintiff must show "'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'" *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)(quoting *Rodriguez v. Avita*, 871 F.2d 552, 554–55 (5th Cir. 1989)); *see also Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010), cert. denied, 563 U.S. 935, 131 S. Ct. 2094 (2011) (normally the plaintiff must show a pattern of similar violations, and when it involves excessive force, the prior actions must have involved injury to a third-party). When the plaintiff asserts the narrow "single incident exception," the plaintiff must show "the highly predictable consequence of failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns*, 594 F.3d at 381.

Plaintiff's failure to train claim fails. Plaintiff alleges the County failed to maintain adequate training on a number of duties or action that resulted in the alleged constitutional violations. Plaintiff does not allege, however, that the officers were not trained and does not allege with specificity how the County's training program is inadequate or systematically deficient. Without specific allegations on how County's particular training is defective, Plaintiff merely makes conclusory statements and recites the elements for a failure to train claim. These conclusory statements without pleading facts from which the Court could rationally infer that

the County's final policymaker was even aware of any systematic deficiencies in officer training, supervision, or discipline are insufficient.

Even if Plaintiff alleged facts showing how the County's training was inadequate, Plaintiff's claim would still fail for not alleging deliberate indifference. Plaintiff fails to allege a pattern of similar incidents involving County officers entering a home without a valid writ or using excessive force. The Complaint briefly references Defendant Robinson's alleged history of excessive force but does not allege or provide facts showing those incidents were even similar to Plaintiff's allegations. Moreover, Plaintiff does not allege a pattern of conduct of the County's officers or deputies using excessive force or entering homes without valid warrants or probable cause. The Complaint also wholly fails to allege facts fitting this incident within the narrow single incident exception despite her responsive argument to the contrary. The Complaint makes no reference to the single incident exception nor does it assert Plaintiff's specific alleged injury was a highly predictable consequence of County's failure to train. *See id*.

Because Plaintiff failed to allege a pattern of conduct showing inadequate training and, alternatively, failed to allege the single incident exception, she failed to establish the necessary element of the County's deliberate indifference. The Court **DISMISSES** Plaintiff's failure to train claim.

## VI. Plaintiff's Motion for Leave to Amend

In her response, Plaintiff requested leave to amend the complaint a third time. Under Rule 15(a), a court has broad discretion to grant leave to amend and should not deny leave to amend unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party." *U.S. v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003); *see* FED. R. CIV. P. Rule 15(a). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Humana*, 336 F.3d at 387.

The Court **DENIES** Plaintiff's request for leave to amend her complaint. Plaintiff only briefly stated her request for leave as an alternative remedy, and she did not state any grounds on which she sought amendment. *See id*. Furthermore, Plaintiff has previously amended her complaint twice, once after Defendants filed their original motion to dismiss which gave her the opportunity to alter her complaint as needed to address Defendants' arguments. Thus, in its discretion, the Court **DENIES** Plaintiff's alternative motion for leave to amend.

## VII. Conclusion

In accordance with Plaintiff's voluntarily dismissed claims, the Court **DISMISSES without prejudice** the duplicative claims against Meeks in his official capacity, the retaliation claims, the conspiracy to interfere with civil rights claim, and

Defendants Catalan, Robinson and Whitten from the interference with mother-child relationship claim, and Defendants Hughes and Borton from the bystander liability claim. The Court **GRANTS** Defendants' motion to dismiss based on Plaintiff's failure to state her claims and Defendants' qualified immunity. The Court **DENIES** Plaintiff's motion for leave to amend her complaint. The Court **DISMISSES without prejudice** all of Plaintiff's remaining claims against individual Defendants and the County.

      **SO ORDERED.**

Signed March 20th, 2018.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE